IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

REGINA ANDERSON,

          Plaintiff,

v.                                  CIVIL ACTION NO.   5:13-cv-25760

LIBERTY MUTUAL INSURANCE COMPANY, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *Motion to Remand and for Expenses* (Document 5) and accompanying *Memorandum in Support* (Document 6), Defendants Liberty Mutual Insurance Company, Liberty Mutual Holding Company, Inc., Liberty Mutual Group, Inc., and Liberty Mutual Fire Insurance Company's (together, "Liberty Mutual") *Response in Opposition to Plaintiff's Motion for Remand* (Document 11), and Plaintiff's *Reply Memorandum In Support of Motion to Remand and for Expenses* (Document 14).   Following careful review and consideration, the Court finds that it lacks subject matter jurisdiction and remands the above-styled case to the Circuit Court of Wyoming County, West Virginia.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff initiated this action with a two count *Complaint* (Document 1-1 at 1-9) filed on September 12, 2013, in the Circuit Court of Wyoming County, West Virginia.   The Plaintiff, insured by Liberty Mutual Policy Number A02-288-076017-701, was involved in a motor vehicle accident on August 15, 2011.   (*Id.* at 5.)   The instant dispute revolves around Liberty Mutual's

use of salvaged and/or "used" repair parts when fixing an insured's vehicle following a claim. (*Id.* at 2-4.)  The complaint's first count focuses on the Plaintiff, Regina Anderson (Ms. Anderson), and claims violation of West Virginia Consumer Credit Protection Act (WVCCPA) §§ 46A-6B-3, 46A-6B-102, 46A-6-104, and 46A-6-106.  (*Id.* at 5-6.)  The second count pertains to a potential class of similarly affected individuals, and mirrors the facts, allegations, and claims underlying Count One.[1]  (*Id*. at 6-8.)

The Plaintiff seeks compensatory damages of "the difference in price, value, or cost to Liberty Mutual between the used left rear wheel, left quarter panel, and left tailgate used in the repair of her vehicle and new, OEM parts, or at least $200 per part, whichever is greater." (Document 1-1 at 8.)  The prayer for relief also seeks attorneys' fees, costs of the action and punitive damages.  (*Id.*)  The complaint further alleges that the class is entitled to similar damages as they relate to the specific automobile parts that were used in their respective repairs. (*Id.*)

Liberty Mutual filed its *Notice of Removal* (Document 1) on October 15, 2013.  The Plaintiff filed her *Motion to Remand and for Expenses* (Document 5) and accompanying *Memorandum in Support* (Document 6) on October 29, 2013.  Liberty Mutual filed its *Response in Opposition to Plaintiff's Motion for Remand* (Document 11) on November 12, 2013, and the Plaintiff filed her *Reply* (Document 14) on November 19, 2013.  The matter was subsequently stayed by the Court's December 3, 2013 *Order* (Document 15), "until July 15, 2014, or until such time as the West Virginia Supreme Court of Appeals issues a ruling in the case styled *Liberty Mutual Insurance Company and Greg Chandler's Frame & Body, LLC v. Patrick Morrisey,*

---

1   Ms. Anderson wants to be named as the class representative if a class is certified.   (Document 1-1 at 6.)

*Attorney General*, Case No. 13-0195, whichever is earlier." (Document 15 at 2) (emphasis omitted).[2]

The West Virginia Supreme Court of Appeals issued its opinion in that matter on June 11, 2014, and thereafter, an *Order* (Document 17) was entered requiring a written status report from the parties. Liberty Mutual filed its *Status Report* (Document 19) on July 30, 2014, and the Plaintiff filed her *Status Report* (Document 20) on August 1, 2014. Liberty Mutual notes in its status report that "[t]he W.Va. Supreme Court determined that the Crash Parts Act was erroneously interpreted by the Circuit Court of Kanawha County, West Virginia, as applying to salvaged/recycled original equipment crash parts given that those parts were actually manufactured by the original equipment manufacturer and authorized to use the manufacturer's name," and that further, the West Virginia Supreme Court noted that "a separate cause of action under W.Va. Code § 46A-6-104 did not exist simply because salvaged/recycled original equipment crash parts were being used." (Document 19 at 3.)

Liberty Mutual further stressed that "the Crash Parts Act is inapplicable to Liberty Mutual Insurance Company and Greg Chandler's Frame & Body, LLC's conduct as alleged by the WVAG, and thus, they have not engaged in an unfair or deceptive act or practice prohibited by express legislative mandate." (*Id.*) The Plaintiff's status report stated that "this Court does not have jurisdiction to do anything other than remand the action to the Circuit Court of Wyoming County. Notwithstanding that, in light of the West Virginia Supreme Court's recent decision, which does not affect the jurisdictional issue, Plaintiff is considering whether to dismiss her action voluntarily." (Document 20 at 1.)

---

2   Liberty Mutual requested a stay because they believed that "the very foundation of [the Plaintiffs'] claims will turn on the decision ultimately reached by the W.Va. Supreme Court" in that matter. (Document 13 at 9.) The Plaintiff never filed a response or opposition to the motion to stay.

**STANDARD OF REVIEW**

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a).[3] This Court has original jurisdiction of all civil actions between citizens of different states or between citizens of a state and citizens or subjects of a foreign state where the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a)(1)-(2). Generally, every defendant must be a citizen of a state different from every plaintiff for complete jurisdiction to exist. Diversity of citizenship must be established at the time of removal. *Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir.1998).

Section 1446 provides the procedure by which a defendant may remove a case to a district court under Section 1441. Section 1446 requires that "[a] defendant or defendants desiring to remove any civil action from a State court shall file . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal[.]" 28 U.S.C. § 1446(a). Additionally, Section 1446 requires a defendant to file a notice of removal within thirty days after receipt of the initial pleading. It is the long-settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. *Strawn et al. v. AT &T Mobility, LLC et al.*, 530 F.3d 293,

---

3   Section 1441 states in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

4

296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted).

Accordingly, in this case, the removing defendant has the burden to show the existence of diversity jurisdiction by a preponderance of the evidence. *See White v. Chase Bank USA, NA.*, Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D. W. Va. Aug. 26, 2009) (Faber, J) (citing *McCoy v. Erie Insurance Co.*, 147 F.Supp.2d 481,488 (S.D. W. Va. 2001)). In deciding whether to remand, because removal by its nature infringes upon state sovereignty, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

## DISCUSSION

Liberty Mutual argues that removal is proper because complete diversity exists between the parties. It notes that the Plaintiff is a citizen of the state of West Virginia, and that all of the Defendants are Massachusetts corporations. (Document 1 at 2.) It further notes that while the Plaintiff has not "specifically pled a sum certain that she is seeking," she has asked for "compensation for the alleged difference in price, value, and/or the parts used and new OEM parts, or $200 per part, whichever is greater," which, taken with the Plaintiff's prayer for "punitive damages, prejudgment interest, costs, expenses, and attorney's fees," "far exceeds the minimum statutory threshold amount in controversy of $75,000." (*Id.*) It stresses that "claims for punitive damages and attorneys' fees are factored into the amount-in controversy analysis." (*Id.* at 3.)

The Plaintiff strongly disagrees, and argues in her motion to remand that "the amounts in controversy in the claims of the class—or at least the attorneys' fees or punitive damages portions

of those claims" cannot be aggregated for purposes of satisfying the jurisdictional amount[4] (Document 6 at 3.) The Plaintiff notes that Liberty Mutual has not shown by a preponderance of the evidence that the amount in controversy in her case alone exceeds $75,000 because her compensatory claims are worth no more than $2,000. (Id. at 5-6.) The Plaintiff further points to guidance from the West Virginia Supreme Court of Appeals, noting that it has "essentially capped punitive damages at a multiple of five times the compensatory damages," or roughly $10,000 in a potential punitive damages award here. (*Id.* at 6) (citation omitted).

The Plaintiff then posits that, "to make up the difference," her attorneys would have to log approximately "157.5 hours of work—solely to her case (not the class action case or the case for the other members of the class)—and be awarded compensation at the rate of $400 per hour." (Document 6 at 6.) She argues that "very little legal work will need to be done solely for [her] case, and certainly not an entire month's worth of one attorney's time, which is what it would take to meet the jurisdictional threshold." (*Id.*) Finally, the Plaintiff requests reasonable attorneys' fees and costs as a result of the removal because Liberty Mutual lacked "an objectively reasonable basis for removal." (*Id*. at 6-7) (citation omitted).

Liberty Mutual's response emphasizes that just the Plaintiff's claim alone "satisfies the amount in controversy requirement" even when she is "undervaluing . . . her claims for the clear attempt of defeating diversity . . . as [she] is not seeking just the difference in the cost of the parts in question, but also the 'value' of said parts." (Document 11 at 8.) Liberty Mutual states that any parts value "could be more than the difference of the prices," and, thus, her recovery could be

---

4  A review of the pleadings reveals that the parties believe that the first requirement of diversity jurisdiction, diversity of citizenship, is satisfied. The Court agrees. It then follows that the parties' contentions revolve around the determination of the amount in controversy.

greater than $2,000.  (*Id*.)   However, it then concedes that her compensatory damages alone "will not reach the [greater than] $75,000 requirement."  (*Id.*)   Thus, Liberty Mutual relies on potential punitive damages and attorneys' fees raising "the potential amount in controversy above the statutory minimum," and it further notes that the amount in controversy determination "is based on the record existing *at the time the petition for removal was filed*."  (*Id.*) (emphasis in original).

Liberty Mutual also contests the Plaintiff's characterization that the greatest punitive to compensatory ratio in West Virginia is five to one, and argues that this matter may "fall into the W.Va. Supreme Court's classification of a 'tremendous' potential for harm but with minimal compensatory damages."  (Document 11 at 9) (citing *TXO v. Prod. Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 476, 419 S.E.2d 870, 889 (1992)).  It stresses that "punitive damages 500 times greater than compensatory damages are not *per se* unconstitutional under *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991) and *Garnes v. Fleming Landfill*, 186 W. Va. 656, 413 S.E.2d 897 (1991)."  (*Id.* at 10.)  Summarizing the potential punitive damages portion, Liberty Mutual declares that it would be exposed to greater potential awards because it is a large corporation, and further, "the assertion that Plaintiff Anderson would only seek $10,000 in punitive damages . . . stretches the bounds of credibility."  (*Id.* at 11.)

Liberty Mutual then argues that "when a right to attorney fees is provided by contract or statue (sic), then the District Court may consider attorney fees as part of the amount in controversy." (Document 11 at 11) (reference omitted).  It maintains that attorney's fees are available because the Plaintiff's claims are brought pursuant to the WVCCPA.  Liberty Mutual also challenges the Plaintiffs approximation of the number of hours necessary to prosecute her

claim, and states that "discovery with respect to the manufacturer warranty at issue and the interplay between certain replacement parts and that warranty" indicates that the hours will be substantial. (*Id.* at 12-14.) "Obviously, litigation surrounding just Plaintiff Anderson's claim alone will be quite time consuming and involve more than just a little work." (*Id.* at 15.) The response in opposition also states that no costs or fees should be imposed "when the propriety of the removal actions is subject to fair dispute and the attempt was not made for the purpose of harassing or annoying the plaintiff." (*Id.*)

The Plaintiff replies that the Defendants have not met their burden of persuasion for establishing diversity jurisdiction. (Document 14 at 1-2.) She stresses that Liberty Mutual "has simply recast the same bundle of conclusory declarations," for example, when Liberty Mutual stated that the Plaintiff's potential compensatory recovery "'*could be* greater than . . . $2,000.'" (*Id.* at 2.) (emphasis in original). She also declares that the Defendants are in the best position to know how much they saved on her repair, and how much a "new left tailgate assembly, rear wheel, and quarter panel on a 2009 Chevrolet Aveo are worth or cost (by retail price, resale value) . . ." (*Id.*)

The Plaintiff notes that the Defendants "concede that the claims of the class members cannot be aggregated for purposes of reaching the jurisdictional amount." (*Id.* at 3, n. 1.) She also finds it difficult to believe that such a large punitive damage could result where "Liberty Mutual paid only $675 for the used parts used in the repair of her car (and likely saved only a comparable amount against the cost of new parts, although [it] won't reveal how much it saved)." (*Id.*)

The Court finds that Liberty Mutual has failed to satisfy its burden of demonstrating—by a preponderance of the evidence—that the amount in controversy is satisfied. The record currently before the Court counsels for remand to the Circuit Court of Wyoming County, West Virginia. "The mere possibility that the plaintiff and proposed class *could* meet that requirement is not enough to give this court jurisdiction." *Caufiled v. EMC Mortgage Corp.*, 803 F.Supp.2d 519, 528 (S.D. W.Va. 2011) (Goodwin, J.) (emphasis in original). "In order to demonstrate a basis for federal jurisdiction, the party seeking removal must present facts rather than speculation." *Caulfield*, 803 F.Supp.2d at 527. The facts gleaned from the record before the Court indicate that the actual cost of the repair parts used to fix the Plaintiff's automobile were, at most, $675. She pegs the amount of damages at $2,000. The Court is confident that Liberty Mutual knows, or could easily ascertain, the true cost to fix the Plaintiff's automobile using either repair parts and/or brand new OEM parts. If that amount were more than what the Plaintiff is claiming, Liberty Mutual could have incorporated it into their response in opposition. Instead, it chose to argue that the potential recovery "could be greater than the *generous* $2,000 valuation [afforded by the Plaintiff]." (Document 11 at 8.) (emphasis in original). Such an argument is unavailing.

Liberty Mutual's attempt to rest the validity of removal on the amount of any potential award of attorneys' fees falls short for a number of reasons. Neither the Plaintiff nor Liberty Mutual knows the hours that will be expended to successfully litigate the matter. Yet, both engage in speculation and conjecture on this subject in their briefs. Further, attorneys' fees are not guaranteed under the WVCCPA, even if the Plaintiff is ultimately successful. "In any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct . . . the court *may* award *all or a portion* of the costs of litigation, including reasonable attorney fees . . ."

9

W.Va. Code § 46A-5-104. (emphasis added). This District has emphasized that "estimation of attorneys' fees at an early stage of litigation amount[s] to pure speculation which 'cannot be used to augment the amount-in-controversy.'" *Caufield*, 803 F.Supp.2d at 529. (quoting *Bartnikowski v. NVR, Inc.*, 307 Fed.Appx. 730, 736 fn 12 (4th Cir. 2009).

Likewise, Liberty Mutual's attempt to base the validity of removal on any potential award of punitive damages is at best, speculative. Simply because the Plaintiff included them in her prayer for relief does not mean that they are necessarily available under West Virginia law. Although the Northern District of West Virginia has found that "punitive damages are not available under the WVCCPA" (See *Virden v. Altria Group, Inc.*, 304 F.Supp.2d 832, 851 (N.D. W.Va. 2004)), the West Virginia Supreme Court of Appeals has yet to address the issue of whether they are recoverable in this type of action. Since the issue remains somewhat unresolved, punitive damages do not help the Defendant meet the statutory threshold for diversity. This Court resolves the issue of whether punitive damages can be counted towards the threshold amount, for establishing diversity jurisdiction, using the sound principle that it must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley*, 187 F.3d at 425. It is clear from the record that Liberty Mutual has failed to establish this Court's jurisdiction and, therefore, the case must be remanded to state court.

## CONCLUSION

Following thorough review and after careful consideration, the Court **FINDS** that it lacks subject matter jurisdiction in the above-styled matter. Accordingly, the Court hereby **ORDERS** that the Plaintiff's *Motion to Remand and for Expenses* (Document 5) be **GRANTED in part**.

Specifically, the Court **ORDERS** that the motion to remand be **GRANTED** and that this case be **REMANDED** to the Circuit Court of Wyoming County, West Virginia, for further proceedings. The court further **ORDERS** that the motion for expenses be **HELD IN ABEYANCE**.

The Court observes that the Plaintiff has requested an award of costs and fees associated with the removal of this action. Should the Plaintiff continue to seek such an award, the Court **ORDERS** that she submit briefing to support her calculation of applicable costs **no later than August 18, 2014,** and that the Defendant submit any opposition within seven (7) days of the receipt of Plaintiff's brief in support.

Lastly, the Court **ORDERS** that its order of remand be **STAYED** pending resolution of the motion for an award of costs and fees.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to the Clerk of the Circuit Court of Wyoming County, West Virginia, to counsel of record and to any unrepresented party.

    ENTER:    August 8, 2014

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA